Thomas KNIGHT et al., Plaintiffs,

v.

BOARD OF REGENTS OF the UNIVERSITY OF the STATE OF NEW YORK, Adelphi University, James E. Allen, as Commissioner of Education, Defendants.

No. 66 Civ. 4053.

United States District Court
S. D. New York.

June 2, 1967.

Alan H. Levine, New York City, N. Y. Civil Liberties Union. Golenbock & Barell, by Donald D. Shack, Levy, Gutman & Goldberg, by Jeremiah S. Gutman, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of the State of New York. by Samuel A. Hirsh-

owitz, Robert E. Hugh, and Karla Moskowitz, Asst. Attys. Gen., for defendants Bd. of Regents of the University of the State of New York and James E. Allen, as Commissioner of Education.

Bennett, Kaye & Scholly, by Robert J. Pape, Rockville Centre, N. Y., for defendant Adelphi University.

Before MOORE, Circuit Judge, and RYAN and TYLER, District Judges.

## OPINION

TYLER, District Judge.

Plaintiffs are twenty-seven faculty members at Adelphi University, a private, non-profit institution of higher learning located in Garden City, New York and tax exempt under Section 420 of the New York Real Property Tax Law, McKinney's Consol.Laws, c. 50–A.

Section 3002 of the New York Education Law, McKinney's Consol.Laws, c. 16, requires every citizen teacher, instructor or professor in any public school or in any private school the real property of which is in whole or in part exempt from taxation to execute an oath. In pertinent part, Section 3002 reads as follows:

"Oath to support federal and state constitutions. It shall be unlawful for any citizen of the United States to serve as teacher, instructor or professor in any school or institution in the public school system of the state or in any school, college, university or other educational institution in this state, whose real property, in whole or in part, is exempt from taxation under section four of the tax law unless and until he or she shall have taken and subscribed the following oath or affirmation: 'I do solemnly swear (or affirm) that I will support the constitution of the United States of America and the constitution of the State of New York, and that I will faithfully discharge, according to the best of my ability, the duties of the position of .............. (title of position and name or designation of

school, college, university or institution to be here inserted), to which I am now assigned.'"

Although this statutory requirement dates back to 1934, through inadvertence Adelphi had not previously requested that its faculty members execute the oath. In October, 1966, however, upon being made aware of the statute, the administrative offices of Adelphi asked all the members of its teaching staff to sign and return the oath. Plaintiffs have refused to do so, instead bringing this action to enjoin the enforcement of the oath provision. They allege that the requirement is unconstitutional in that it violates their rights under the First, Fifth, Ninth and Fourteenth Amendments of the Constitution.

On April 4, 1967, Judge Ryan signed an order that this cause be heard and determined by a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284. Argument was heard on May 2, 1967.

So far as we can determine, the precise question of whether an oath such as that provided for by Section 3002 may constitutionally be required of teachers has not been ruled upon by the Supreme Court. That Court, however, has recently stated that Georgia's requirement that her legislators take a similar oath in no way impinges upon the First Amendment's protection of free speech. Bond v. Floyd, 385 U.S. 116, at 132, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966). Moreover, the Court, in striking down so called "negative loyalty oath" requirements of the states, has never suggested that the First Amendment proscribes any form of oath or affirmation required of teachers. See, e. g., Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966).

Plaintiffs rely heavily upon West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) in which the Supreme Court held unconstitutional a state statute requiring school children to salute and pledge allegiance to the American flag. The pledge of allegiance there involved, however, was far more elaborate than the affirmation required by New

York of teachers in public and tax supported educational institutions. Furthermore, the decision in *Barnette* was based on the First Amendment's guarantee of religious freedom. The plaintiffs there were members of a religious group who claimed that the requirement of the oath and accompanying salute violated their religious beliefs. No such claim or allegation is made here.

■ Because the school children in *Barnette* faced stiff penalties should they refuse to salute and pledge allegiance to the flag, plaintiffs in this case have suggested that Section 29 of the New York Penal Law, McKinney's Consol.Laws, c. 40 [1] must be read into Section 3002 to make a violation thereof a misdemeanor. Literally, this would appear to be so, but in fact the New York courts have exhibited a notable reluctance to so apply Section 29. In recent years, the state courts have reasoned that an act or a failure to act is not a crime unless the legislature, in addition to forbidding it, imposes a specific penalty for its commission. See e. g. People v. Luongo, 39 Misc.2d 905, 242 N.Y.S.2d 98 (Sup.Ct., Kings County, 1963) and cases cited therein.

■ Plaintiffs also urge that Section 3002 suffers the vice of vagueness. In support of this theory, they rely upon the line of Supreme Court cases striking down "negative loyalty oaths" or "non-Communist oaths". See, e. g., Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Keyishian v. Board of Regents of University of State of New York, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed. 2d 629 (1967); Elfbrandt v. Russell, supra; Cramp v. Board of Public Instruction, etc., 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961). As plaintiffs' counsel candidly conceded at oral argument, however, such oaths, which typically require an affiant to state that he is not now and has never been a member of certain organizations, present a very different problem.

■ The language of Section 3002 is simple and clear in its import. It requires no more than that the subscriber affirm that he will support the constitutions of the United States and the State of New York and that he will be a dedicated teacher. The statutory language of support of the constitutional governments can be substantially equated to that allegiance which, by the common law, every citizen was understood to owe his sovereign. 1 Blackstone's Commentaries (Fifth Edition) 369.[2] As for the statutory requirement of professional dedication, we have been referred to the recent case of Pedlosky v. M. I. T., Mass., 224 N.E.2d 414 (1967) which voided a strikingly similar portion of a Massachusettes statute. Aside from the fact that we are not bound by the holding in *Pedlosky*, we are not persuaded by its reasoning. In our view, a state can reasonably ask teachers in public or tax exempted institutions to subscribe to professional competence and dedication.

■■ Plaintiffs, conceding that it is constitutionally permissible to demand from public officials, federal and state, an oath or affirmation substantially the same as that set forth in Section 3002, suggest that different considerations apply to teachers. In sum, it is said that teachers' speech must be totally "free of interference". But, as may be implied from what has already been said, we interpret the statute to impose no restrictions upon political or philosophical expressions by teachers in the State of New York. A state does not interfere with its teachers by requiring them to support the governmental systems which shelter and nourish the institutions in

1. "Where the performance of any act is prohibited by a statute, and no penalty for the violation is imposed in any statute, the doing of such act is a misdemeanor."

2. "Which occasions Sir Edward Coke very justly to observe, that 'all subjects are equally bounden to their. allegiance, as if they had taken the oath; because it is written by the finger of the law in their hearts, and the taking of the corporal oath is but an outward declaration of the same'."

which they teach, nor does it restrict its teachers by encouraging them to uphold the highest standards of their chosen profession. Indeed, it is plain that a state has a clear interest in assuring " * * * careful and discriminating selection of teachers" by its publicly supported educational institutions. See Shelton v. Tucker, 364 U.S. 479, at 495–496, 81 S.Ct. 247, at 256, 5 L.Ed.2d 231, (1960), (dissenting opinion of Frankfurter, J.), see also majority opinion at 485, 81 S.Ct. at 250.

The plaintiffs' motion for an injunction *pendente lite* is denied, and defendants' motion to dismiss the complaint is granted. It is so ordered.